**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

DEDRICK JOHNSON,                    )
                                   )
              Plaintiff,            )
                                   )
       vs.                         )        **3:17-cv-00071-PPS-MGG**
                                   )
LIEUTENANT JEREMY                  )
DYKSTRA, *et al.*,                 )
                                   )
              Defendant.           )

## OPINION AND ORDER

All four defendants in this case are corrections officials who are moving for

summary judgment on Dedrick Johnson's claims arising from an incident during his

incarceration in the Indiana State Prison [DE 78]. Johnson claims he was subjected to

substandard conditions of confinement, including foul odors, which forced him to rip

wires out of his jaw to avoid choking on his own vomit. All of the claims against the

Warden, Ron Neal, and the Deputy Warden, George Payne, are without merit and will

be dismissed. But there are material issues of fact that are in dispute on some of the

claims against correctional officers Anthony Watson and Jeremy Dykstra, and those

claims must be resolved by a jury.

### Factual Background

Under the subtitle "Statement of Material Facts Not In Dispute," Defendants set

forth facts they propose are undisputed, each supported by a citation to exhibits in the

record. [DE 79 at 2-3.] Johnson has a section of his response brief entitled "Statement of

Material Facts in Dispute." [DE 87 at 2-3.] But instead of responding to the numbered

paragraphs in the Defendants' statement of material facts, Johnson has set forth a factual narrative. Some of the facts are not supported by evidence, and some improperly cite to the "facts" previously stated by me in my earlier screening order [DE 10]. *See* L.R. 56-1(b). I will eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement. *See* Fed. R. Civ. P. 56(e).

Defendants criticize Johnson for citing to his own affidavit[1], but this is entirely appropriate. "[A party's own] deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving . . . As we have repeatedly emphasized over the past decade, [such evidence is] perfectly admissible . . . at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967-68 (7th Cir. 2013). As long as a competent declarant makes statements based upon personal knowledge, the affidavit can support a summary judgment motion. *Id.* at 968.

However, there is another problem with Johnson's affidavits that neither party has raised. The affidavits are not notarized, but both contain Johnson's signature and state they are made under the penalties of perjury. Under 28 U.S.C. § 1746, a declaration "under penalty of perjury, *and dated*" is admissible in lieu of a sworn affidavit on a motion for summary judgment. 28 U.S.C. § 1746 (emphasis added); *see also Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985). Thus, notarization is not required.

---

[1] Johnson has actually submitted two affidavits in response to the motion for summary judgment. [DE 87-4 and 87-8.] The affidavit at entry 87-8 seems to contain some additional information compared to the one at entry 87-4, but I have reviewed and considered both affidavits.

But, the statute expressly requires that to substitute for a sworn declaration or affidavit, an unsworn declaration must be dated. Johnson's affidavits do not meet the requirements of the statute because they are not dated.

But it is equally true that the Defendants did not raise this objection or file a motion to strike the affidavits. So the issue has been waived by the Defendants. Additionally, Johnson started off this case pro se. I usually prefer to base my decisions on the merits of a case, instead of a technicality. Indeed, I am mindful that "a district court should not be unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied." *Pfeil*, 757 F.2d at 859. So I will exercise my discretion and will overlook the defect that the affidavits are undated.

Here are the facts viewed in the light most favorable to Johnson: Johnson was confined at the Indiana State Prison. Prior to May 26, 2016, Johnson's jaw was broken, which required stitches and his mouth being wired shut. [Second Amended Complaint ("SAC"), DE 51, ¶ 23.] On May 26, 2016, Johnson was placed in a Special Management Cell ("SMC") by Dykstra and Watson. [Johnson Aff., DE 87-8, ¶ 3.] According to Johnson, the cell he was placed in "had fecal matter covering its walls, floors, and door. The cell's toilet was smeared and caked with vomit and feces. The cell's floor was also coated with urine." [*Id.*, ¶ 4.] Johnson attests that "[t]he sight and smells emitting from the Special Management Cell were such that Lieutenant Jeremy Dykstra and Lieutenant Anthony Watson could see and smell the conditions of the cell in which they placed

me." [*Id.*]

Due to the "overwhelming stench and repulsive state" of his cell, Johnson "began to gag and vomit uncontrollably." [*Id.*, ¶ 7.] Johnson ripped out the wiring which kept his mouth shut so he would not choke on his own vomit. [*Id.*, ¶ 8.] In so doing, he experienced extreme pain and a tooth was broken. [*Id.*] At 1:20 p.m. on May 26, 2016, Johnson informed Officer M. Smith that he ripped out the wires in his jaw, which broke a tooth. [DE 78-2 at 6.] Ten minutes later, at 1:30 p.m., Johnson was escorted to medical for treatment. [*Id.*] Johnson was kept in the same SMC for six days, in which none of the Defendants took any action to improve the deplorable conditions of his cell. [Johnson Aff., DE 87-8, ¶ 10.]

In addition to his own affidavit, Johnson submitted several affidavits from fellow inmates (which suffer the same defect as Johnson's affidavits of being undated). Johnson submitted the affidavit of Anthony Cross, who is also currently incarcerated at the Indiana State Prison. [DE 87-9.] Cross states he "has personal knowledge of the inhumane conditions at Indiana State Prison in general and also has personal knowledge that the conditions of the Special Management Cells at Indiana State Prison are unsanitary and inhumane." [*Id.*, ¶ 3.] Similarly, Johnson provided an affidavit from Jermaine Bradley, another inmate who attested to the same plus that he personally knew that the SMC where Johnson was held from May 26-31, 2016, was covered in feces, vomit, and urine, and that Johnson had to rip the wiring out of his mouth so he would not choke on his own vomit. [DE 87-3.]

The four defendants are comprised of the following people: Dykstra and Watson were correctional lieutenants assigned to the dorm in which Johnson was housed. [DE 78-2 at 4.] Neal was the Warden of the Indiana State Prison. [SAC, ¶ 10.] While Payne is also a named defendant, it was determined that Payne was not employed at the Indiana State Prison during the pertinent time frame. He instead was employed at the Westville Correctional Facility at that time. [DE 78-1 at 2.]

In their statement of material facts, Defendants allege that Johnson does not have any evidence that they were aware of a strong likelihood that Johnson would harm himself in the near future. [DE 79 at 3.] Defendants also submit that Johnson does not have evidence that any of them consciously failed to take reasonable measures to prevent Johnson from seriously harming himself or that they ever denied or delayed his access to medical care. [*Id.*]

### Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact

exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010). However, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted).

## I.      Monell Claims (Count I)

The second amended complaint sets forth claims against Neal and Payne in their individual and official capacities alleging the policies, customs and practices of the Indiana State Prison caused the violation of Johnson's constitutional rights and that it failed to properly train its employees. [SAC at 6.] Municipalities may be held liable under § 1983 if their official policies, including unwritten customs, cause constitutional violations. *See Monell v. Dep't of Soc. Servs. of the City of N.Y.,* 436 U.S. 658, 690-91 (1978).

### A.      Official Capacity Claims Against Neal and Payne

Let me first address the *Monell* claims against Neal and Payne in their official capacities. Because a state official sued in his official capacity is not a "person" within the meaning of section 1983, the official capacity claims against Neal and Payne are really suits against the state. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). Moreover, a claim for money damages against Neal and Payne in their official capacities (which is a suit against the state), is barred by the Eleventh Amendment and the doctrine of sovereign immunity. *Power v. Summers,* 226 F.3d 815, 818 (7th Cir. 2000).

6

It is necessary to walk through this because Johnson contests the applicable law.

Under 1983, a suit brought against an officer in his official capacity is actually a suit

against the government entity for which he works. *Kentucky v. Graham*, 473 U.S. 159,

165 (1985). The Eleventh Amendment provides sovereign immunity to states *and* state

officials acting in their official capacity. *Id.* at 167; *Meadows v. State of Indiana*, 854 F.2d

1068, 1069 (7th Cir. 1988); *Lundeen v. Rhoad*, 991 F.Supp.2d 1008, 1016-17 (S.D. Ind. 2014).

While Johnson may bring suit against state officials in their official capacity for

injunctive relief, he may not bring suit for monetary damages for an alleged

constitutional violation. *See Watkins v. Blinzinger*, 789 F.2d 474, 484 (7th Cir. 1986);

*Lundeen*, 991 F.Supp.2d at 1017. Because Johnson is not alleging an ongoing violation of

federal law seeking relief "properly characterized as prospective," *McDonough Assocs.,*

*Inc. v. Grunloh*, 722 F.3d 1043, 1051 (7th Cir. 2013), but rather seeks only monetary

damages [SAC at 9-10], defendants Neal and Payne are shielded from liability by

sovereign immunity and are entitled to summary judgment on Johnson's official

capacity *Monell* claims.

> **B.      Individual Capacity Claims Against Neal and Payne**

Johnson has also brought *"Monell"* claims against Neal and Payne in their

individual capacity. But this is an oxymoron. A party simply may not assert a *Monell*

claim against prison officers in their individual capacities. Recall that under section

1983, only municipalities may be held liable for constitutional violations caused by their

official policy including unwritten customs. *Monell*, 436 U.S. at 691. Thus, any *Monell*

claim against Neal and Payne individually must be dismissed.

## C.     Failure to Train Claim

Also included under Count I for the *Monell* claims is a reference to a failure to train.  [SAC, ¶¶ 42-43.]  Although the Defendants move for summary judgment on all claims, neither party directly addresses this claim in the briefing.  "Supervisors may be liable under § 1983 for a failure to train, but the circumstances are extremely limited.  Negligence, or a 'should have known' standard, is not enough.  Rather, the plaintiff must show that the defendant knew that his failure to train was likely to lead to constitutional violations."  *Ghashiyah v. Frank*, No. 07-C-308-C, 2007 WL 5517455, at *2 (W.D. Wis. Aug. 1, 2007) (citing *Kitzman-Kelley v. Warner*, 203 F.3d 454, 459 (7th Cir. 2000) and *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)).  Ultimately, Johnson has to show that the official knew the training was inadequate to handle a particular situation and that a constitutional violation was likely without improvements.  *Kitzman-Kelley*, 203 F.3d at 459.

Here, Johnson has put forth no evidence about the training in the Indiana State Prison, or any details about how it was allegedly inadequate, or any facts to show that Neal and Payne knew that their training was inadequate and a constitutional violation would likely result.  Therefore, summary judgment is also warranted on the failure to train claim.

## II. Eighth Amendment Claims – Failure to Protect From Self-Harm/Inhumane Cell Conditions (Count II) and Deliberate Indifference to Serious Medical Need (Count III)

Johnson sets forth two claims under the Eighth Amendment against Neal, Payne, Dykstra, and Watson in their individual and official capacities — one for the failure to protect from self harm (Count II) and one for the deliberate indifference to serious medical need (Count III). Count II alleges that Defendants "were aware of the substantial risk imposed upon Plaintiff and refused to provide sufficient protection." [SAC, ¶ 52.] Count III alleges a refusal to provide sufficient medical care with a deliberate indifference to the serious medical needs of Johnson. [*Id.*, ¶¶ 57-59.]

### A. Eighth Amendment Claims Against Defendants Neal and Payne

I'll first tackle the Eighth Amendment claims against defendants Neal and Payne individually. As noted above, Neal was the Warden of the Indiana State Prison, and Payne was alleged to be the Deputy Warden at the time of the incident on May 26, 2016. [*Id.*, ¶¶ 10, 12.] Johnson "acknowledges and voluntarily relinquishes his official and individual capacity claims against Deputy Warden George Payne, who was not employed by Indiana State Prison at the time during which the incidents alleged herein took place." [DE 87 at 1.] Therefore, summary judgment is proper on the claims against Payne.

As to Neal, the Warden, for the individual-capacity claim, Johnson must show that he was personally involved in a decision that amounted to deliberate indifference. *Palmer v. Marion Cty.*, 327 F.3d 588, 593–94 (7th Cir. 2003); *see also Zimmerman v. Tribble*,

226 F.3d 568, 574 (7th Cir. 2000) ("[Section] 1983 does not allow actions against individuals merely for their supervisory role of others.").  Individual-capacity liability under Section 1983 requires a defendant's personal involvement in the alleged constitutional violation.  *Palmer*, 327 F.3d at 594.  In other words, individual liability for deliberate indifference to the safety and welfare of an inmate only exists if there is proof that the defendant was "aware of a substantial risk of serious injury to [the plaintiff] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quotation omitted).  Because the individual must cause or participate in the constitutional deprivation, a section 1983 claim cannot be based upon a respondeat superior theory of liability.  *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

In this case, Johnson has provided no evidence that he ever raised a medical concern to Warden Neal, or that Neal would have any knowledge about the alleged failure to protect Johnson from self-harm, or that he knew about the state of Johnson's cell.  Therefore, Neal is entitled to judgment as a matter of law on the Eighth Amendment deliberate indifference claims against him in his individual capacity.

As to the official capacity claims against Neal, "a municipality, rather than an individual, may violate the Eighth Amendment where a risk of serious harm was so patently obvious that the municipality must have been aware of risk of harm and, by failing to act to rectify it, sanctioned the harmful conduct."  *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825,

841 (1994)).  This occurs when a municipal policy or practice is the direct cause behind the constitutional violation – which can either be shown directly by demonstrating that the policy is unconstitutional, or by showing a series of bad acts and inviting the court to infer from them that the "policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." *Id.* at 530-31 (quotation omitted).  In this case, Johnson has not pointed me to any evidence whatsoever about a policy that the Indiana State Prison adopted or condoned which directly caused his injury.  Moreover, Johnson has not identified any other instances of inmates not receiving adequate medical care or failing to prevent their self harm.  As such, summary judgment is warranted on the official capacity claims against Neal.

> **B.     Conditions of Confinement/Failure to Prevent Self Harm Claims Against Dykstra and Watson**

Next up is Johnson's claim against Dykstra and Watson for failure to protect from self harm. According to Johnson, "Defendants were aware of the substantial risk imposed upon plaintiff and refused to provide sufficient protection."  [SAC, ¶ 52.]  The accompanying claim that goes along with this is that Johnson was denied humane conditions of confinement.  Although Defendants argue that Johnson never alleged a claim for inhumane conditions of confinement in the second amended complaint [DE 93 at 6], I disagree.  There are factual allegations in the complaint setting forth the deplorable cell conditions [SAC, ¶¶20-22, 24-25, 27], and these were incorporated by

reference into Count II for cruel and unusual punishment under the Eighth Amendment [SAC, ¶ 50]. A claim does not need to be specifically labeled in order to set forth a cause of action. *See Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) ("One pleads a claim for relief by briefly describing the events.").

The Eighth Amendment, which prohibits "punishment" that is "cruel and unusual," imposes a duty on prison officials to provide "humane conditions of confinement" by ensuring inmates receive adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832. Prison officials must also ensure that "reasonable measures" are taken to guarantee inmate safety and prevent harm. *Id.* To prevail under the Eighth Amendment based on a failure to prevent harm, an inmate must demonstrate that: (1) the harm was objectively, sufficiently serious and a substantial risk to his health or safety; and (2) the individual defendants were deliberately indifferent to that risk. *Id.* at 834; *see also Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). To prevail on an Eighth Amendment claim based on the cell conditions, Johnson must show he was denied "the minimal civilized measure of life's necessities." *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Similarly, a prison official may only be held liable for denying humane conditions of confinement if he knew the inmate faced a substantial risk to his health or safety, but disregarded the risk by failing to take any reasonable measures to ameliorate it. *Farmer*, 511 U.S. at 847.

Liability under this deliberate indifference standard requires more than negligence, gross negligence, or even recklessness – it is only satisfied by conduct that approaches intentional wrongdoing. *Id.* at 835-36. "Deliberate indifference" means that the prison officials must have each known that the inmate "faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). An official's failure to alleviate a significant risk that he should have perceived, but did not, does not constitute the infliction of cruel and unusual punishment. *Farmer*, 511 U.S. at 837.

In this case, ripping the wires out of his jaw to avoid choking on his own vomit clearly poses a "serious" risk to Johnson's health and safety. *See Collins*, 462 F.3d at 760. There is also sufficient evidence that Dykstra and Watson knew that Johnson faced a substantial risk of serious harm, but failed to move him out of the filthy cell and away from the stench. *See Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (court "must construe all facts and reasonable inferences in favor of the nonmoving party").

Johnson argues that "Defendants knew or should have known that anyone put into a Special Management Cell with caked feces, vomit, and urine on the floor, walls, and toilet, would have an involuntary physical reaction to such inhumane conditions" [DE 87 at 13]. Here, Johnson's affidavit establishes that Dykstra and Watson placed him in the cell and Johnson states they "could see and smell the conditions of the cell in which they placed me" [DE 87-8, ¶ 4]. It is well settled that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was

obvious." *Farmer*, 511 U.S. at 842. Here, the jury could readily find that Dykstra and

Watson knew about the inhumane cell condition because of the obvious stench and

visible fecal matter and vomit in the cell. Moreover, the second amended complaint

alleges "[u]pon information and belief, Defendants were on notice of Plaintiff's broken

jaw" [SAC, ¶ 24], so the jury could also find that Dykstra and Watson knew there was a

substantial risk that Watson could hurt himself by vomiting with his mouth wired shut.

Johnson argues my screening order [DE 10] should be controlling because I

already found that there was enough evidence for a claim of deliberate indifference.

While I have again come to this conclusion, it is axiomatic that the standards on a

screening order are different than that of summary judgment. A screening order tests

the sufficiency of the complaint, but a motion for summary judgment tests the

sufficiency of the evidence. "A plaintiff must meet a motion for summary judgment

with evidentiary materials that show there is a genuine issue for trial." *Estate of Simpson

v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017).

Here, Johnson did provide evidence through his affidavits and the affidavits of

inmates Cross and Bradley who have attested to the unsanitary and inhumane

conditions at the Indiana State Prison. [DE 87-9 and 87-3.] According to inmate

Bradley, he personally knew that the SMC where Johnson was held from May 26-31,

2016, was covered in feces, vomit, and urine, and that Johnson had to rip the wires out

of his mouth so he would not choke on his own vomit. [DE 87-3.] Similar sufficiently

serious conditions have been found to state a claim under the Eighth Amendment. *See,*

*e.g., Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (summary judgment improper where inmate alleged he lived with filth and constant smell of human waste); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (remanding, finding summary judgment inappropriate as to violation of Eighth Amendment rights where inmate was held for three days in cell with no running water and feces on walls). Moreover, Johnson has provided evidence that he remained in this cell for 6 days [DE 87-8, ¶ 10], so a jury could find that Dykstra and Watson did not take reasonable steps to prevent the harm. This evidence is enough to prevent summary judgment against Dykstra and Watson on the claims of deliberate indifference for failure to prevent self-harm and inhumane cell conditions.

Defendants argue that even if a reasonable jury could find that Johnson's constitutional rights were violated, Watson and Dykstra are entitled to qualified immunity. The Supreme Court has identified two key inquiries for assertions of qualified immunity: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In this case, the answer to both questions is yes. Johnson's version of events suggests that Dykstra and Watson knowingly left him in a cell with bodily fluids and stench for 6 days, while knowing that his mouth was wired shut from surgery. It is firmly established that deliberately subjecting an inmate to cruel and unusual conditions of confinement may

15

violate the Eighth Amendment.  *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007)

(reversing district court's decision to award summary judgment based on qualified

immunity because there was a genuine issue of material fact whether the defendants

were deliberately indifferent to cell conditions).  It is also clearly established that a

prisoner has a right to be free from deliberate indifference to a substantial risk to his

health or safety.  *Estate of Clark v. Walker*, 865 F.3d 544, 551-52 (7th Cir. 2017) (affirming

denial of qualified immunity in failure to prevent suicide).  So qualified immunity does

not apply.

### C.  Failure To Provide Adequate Medical Care Claims Against Dykstra and Watson

Under the Eighth Amendment, inmates are also entitled to adequate medical

care.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To survive summary judgment on this

Eighth Amendment claim, Johnson must submit evidence showing: (1) he was suffering

from an objectively serious medical condition; and (2) the defendants were subjectively

"aware of the condition and knowingly disregarded it."  *Ortiz v. Webster*, 655 F.3d 731,

734 (7th Cir. 2011) (citations omitted).  A medical need is "serious" if it is one that a

physician has diagnosed as mandating treatment, or one that is so obvious that even a

lay person would easily recognize the necessity for a doctor's attention, and if untreated

could result in further significant injury or unnecessary pain, and that significantly

affects the person's daily activities. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Deliberate indifference is a high standard, and is "something approaching a total

unconcern for [a prisoner's] welfare in the face of serious risks," or a "conscious,

16

culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). But just alleging that Dykstra and Watson were deliberately indifferent [SAC, ¶ 58] is not enough. Although the second amended complaint asserts that for the first two days, Johnson did not receive any medical treatment for his injuries [*Id.*, ¶ 26], this is not true. The Government submitted a General Housing Log showing that at 1:20 p.m. on May 26, 2016, Johnson "informed officer M Smith he ripped out his wires and rebroke his jaw," and that ten minutes later, at 1:30 p.m., Sgt. Robinson, Lt. Dykstra, and Capt. Boyan escorted Johnson to the medical unit. [DE 78-2 at 6.] Additionally, Johnson submitted medical records showing that he also visited the nurse the next day, on May 27, 2016, for his morning Ensure (a meal replacement shake and nutritional drink). [DE 87-15 at 5.] The nurse indicated that the "[p]atient drank can of [E]nsure and tolerated well. Patient returned to housing unit ambulatory and in stable condition." [*Id.*]

Non-medical prison officials are not deliberately indifferent to a prisoner's serious medical needs when the officials respond readily and promptly to the prisoner's complaints and defer to the professional judgment of medical professionals. *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). A failure to follow up and further investigate complaints and grievances after referring to a medical professional may be negligent, "but negligence is not deliberate indifference." *Id.* In other words, "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011).

The only thing in the record is that officers escorted Johnson to the medical unit a mere ten minutes after Johnson told an officer that he ripped the wires out of his jaw, and that Johnson returned to the nurse the next day when he drank his can of Ensure which he tolerated well, and was in stable condition. Once he was escorted to medical, Dykstra and Watson were entitled to rely upon the decisions made by the medical providers. At worst, this could be considered negligence that Johnson did not receive further medical treatment. But, as the Seventh Circuit has held, mere negligence does not amount to deliberate indifference. The record reflects that, as a matter of law, the Officers were not deliberately indifferent to Johnson's medical needs. As such, Dykstra and Watson are both entitled to summary judgment on these claims.

### III. Claims Under the Fourteenth Amendment (Count IV)

The second amended complaint alleges that Defendants' actions constitute violations under the Fourteenth Amendment for refusal to provide sufficient protection, medical treatment, and sanitary living conditions with a deliberate indifference. [SAC, ¶¶ 62-63.] The Eighth Amendment does not apply to pretrial detainees, but pretrial detainees are entitled protection under the Fourteenth Amendment. In this case, Johnson was not a pretrial detainee, but a prisoner, so he does qualify for the Eighth Amendment's protection.

"In some contexts, such as claims of deliberate indifference to medical needs, the Eighth and Fourteenth Amendment standards are essentially interchangeable." *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). "In either case the plaintiff has the burden of

showing that: (1) the harm to the plaintiff was objectively serious; and (2) the official was deliberately indifferent to [his] health or safety." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (citations omitted). Therefore, Johnson's claims against Neal and the claims against Dykstra and Watson for deliberate indifference to medical needs fail for the reasons stated above. However, Johnson's claims against Dykstra and Watson for inhumane cell conditions and failure to protect from self harm survive under the Fourteenth Amendment for the same reasons as those articulated earlier – he has showed a triable issue of fact as to whether Watson and Dykstra were deliberately indifferent to the foreseeable harm of placing Johnson in the deplorable cell with his mouth wired shut.

To the extent Johnson argues that he is also bringing a due process claim under the Fourteenth Amendment [DE 87 at 17], I am unsure exactly what claim he intends to bring, as he does not indicate whether it is a procedural due process claim or substantive. All Johnson argues is: "Plaintiff alleges that the deprivations and actions of Defendants are not merely negligent, but also intentional; as such, Plaintiff's Fourteenth Amendment allegations plainly lie." [*Id.* at 18.] I'm not sure what Johnson is trying to get at here. But, I have found that his deliberate indifference claims against Dykstra and Watson as to the cell condition/failure to protect from self harm in violation of the Fourteenth Amendment survive summary judgment.

**IV. First Amendment Claims**

Count V alleges that Defendants impeded Johnson's efforts to exhaust the Indiana State Prison's administrative remedies by failing to properly process and investigate Johnson's informal and formal complaints. [SAC, ¶¶66-67.] There are multiple problems with this claim. First, "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Second, there is no evidence that any of the named defendants were personally involved in impeding Johnson's efforts to exhaust his administrative proceedings. Third, Johnson did successfully bring this lawsuit, and his "invocation of the judicial process indicates that the prison has not infringed his First Amendment right to petition the government for a redress of grievances." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

In his memorandum in opposition, Johnson now argues that the prison officials retaliated against him after he complained about the cell condition following the incident and filed grievances. [DE 87 at 20-21.] First, I note that the two prison grievances filed by Johnson (discussed in more detail in the next section), did not specifically mention the cell conditions. [DE 87-10, 87-11.] Second, the second amended complaint does not mention a claim for retaliation at all. Johnson may not amend his complaint through summary judgment briefing. *See Anderson v. Donahoe*, 699 F. 3d 989, 997 (7th Cir. 2012).

**V.      Motion for Permissive Spoliation Instruction and Sanctions**

About two months after Defendants filed their motion for summary judgment,

Johnson filed a Motion for Permissive Spoliation Instruction and Sanctions [DE 94].

Johnson argues he "has reason to believe that Defendants intentionally deleted or

otherwise discarded" documents as well as photographs and surveillance videos that

were relevant to this case.  [*Id.* at 1.]  Johnson requests an adverse-jury instruction

regarding the lack of video or photographic evidence, as well as sanctions against

Defendants for their bad faith attempt to spoil evidence favorable to Johnson.  [*Id.* at 8.]

I will address the spoliation motion because Johnson has requested sanctions.  Should

this case proceed to trial, Johnson has leave to request an adverse jury instruction at that

time.

When questioned during discovery about the existence of such evidence,

Defendants answered that:

> In general, surveillance videos are routinely recorded over and a
> copy would only exist years later if it was downloaded or saved.
> There is no indication that a video depicting this incident would
> have been saved.  There was no internal investigation and Johnson
> did not receive a conduct report for pulling the wires out of his jaw.
> Likewise, there is no indication that a photograph was ever taken
> after the incident.  Defendants reaffirm that no responsive
> photographs or videos exist.

[DE 94-7 at 2; Ex. M at 1.]

A spoliation argument has a two-part inquiry.  First, "courts have found a

spoliation sanction to be proper only where a party has a duty to preserve evidence

because it knew, or should have known, that litigation was imminent."  *Trask-Morton v.*

*Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (citations omitted).  Second, a showing of "bad faith" is "a prerequisite to imposing sanctions for the destruction of evidence."  *Id.*  "Bad-faith" means "destruction for the purpose of hiding adverse information."  *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998).  The movant bears the burden of showing that the evidence was destroyed for the purpose of hiding adverse information.

Here, Johnson has not satisfied either prong.  Regarding the duty to preserve, Johnson contends that when he filed a prison grievance less than a month after the incident, that triggered a duty to preserve evidence.   However, Johnson cites no case law in support of this contention, and I am not aware of any case holding that a prison grievance triggers a duty to preserve evidence.  Additionally, Johnson only stated in his first grievance dated June 15, 2016, that he "was currently placed in S.M.C. lockup section.  When I was up here for a medical hold only and you can not put anyone in S.M.C. with a medical or d[ue] to his medical condition this must be looked into cause when I was placed there I had two broken jaws. [A]nd this must be looked into."  [DE 87-10.]  The grievance does not mention the condition of the cell or indicate that Johnson was going to file a lawsuit in which the physical condition of the cell might be relevant.  In the second grievance, dated June 23, 2016, Johnson said he "was placed in S.M.C. and was forced to rip my hardware out of my mouth because I was choking to death," but he does not indicate what made him choke, and in the last sentence, he stated "it hurts when I chew as well and also a law suit as well so can you please help

me." [DE 87-11.] But again, the grievance does not implicate the cell conditions and I don't think it raises a duty for the Defendants to preserve evidence regarding the physical state of Johnson's cell.

Even assuming that Defendants were under a duty to preserve the evidence, Johnson has not shown that they were personally involved in destroying any photographs or video coverage, or that they destroyed any such evidence (if it ever existed), because of any damaging content it may have contained. *See Trask-Morton*, 534 F.3d at 681-82 (affirming denial of spoliation sanction where no evidence of bad faith); *Park v. City of Chicago*, 297 F.3d 606, 615-17 (7th Cir. 2002) (affirming denial of adverse inference instruction to the jury when records destroyed under routine procedures). Nothing in Johnson's filings show that Defendants destroyed any videos or photos because of any damaging content it may have contained. As such, sanctions are not appropriate.

### Conclusion

For the foregoing reasons, the Motion For Summary Judgment [DE 78] is GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED as follows: all claims against Defendant Payne are DISMISSED WITH PREJUDICE. Additionally, the following claims are all DISMISSED WITH PREJUDICE: the *Monell* claims in Count I; all claims against Defendant Neal; the claims for refusal to provide sufficient medical care in Count III; the claims for refusal to provide sufficient medical care in Count IV; and the First Amendment claims in Count V.

The Motion for Summary Judgment is DENIED AS TO: the Eighth Amendment claims in Count II against Defendants Dykstra and Watson for inhumane cell conditions and failure to protect from self harm; and the Fourteenth Amendment claims in Count IV against Defendants Dykstra and Watson for inhumane cell conditions and failure to protect from self harm, which REMAIN PENDING.

Finally, the Motion for Permissive Spoliation Instruction and Sanctions [DE 94] is DENIED.

**SO ORDERED.**

ENTERED: May 24, 2019.

/ s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**